Trina Remutal on behalf of Amicus National Immigration Project of the National Lawyers Guild. I'm here with Lindsey Gray, counsel for petitioner. This case involves two consolidated petitions for review. The first challenges the 2014 reinstatement order, and the second challenges the 2015 decision to deny a motion to reopen that order. I will briefly address the court's jurisdiction over the second petition for review, and Ms. Gray will address the remaining issues. We'd like to reserve three minutes for rebuttal. Just days after ICE, U.S. Immigration and Customs Enforcement, issued a reinstatement order in this case, finding petitioner removable under the reinstatement statute at 8 U.S.C. 1231A5, petitioner filed a motion to reopen, pursuant to the regulation at 8 CFR 103.5, with evidence that there was no prior order of removal to reinstate. Well, counsel, does it, I think the other side is trying to argue a waiver argument here. They're trying to say, I think, by signing the, I do not wish to make a statement contesting, that your client either agreed to or waived any right to object to that. I think that's the underlying premise of their brief. I didn't read their brief that way, but let me address the court's question. First, the ticking of the box doesn't constitute an administrative remedy which one needs to exhaust. If this court were to find that, that would be a dramatic departure from the last 20 years of reinstatement law from this court. For example, this court in Briones-Sanchez, the person didn't tick the box, and the person considered the claim. Ochia Carrillo, the same thing. But what I understand- Now, what you say, they checked the box and signed it, and that didn't matter? I'm sorry, tell me what the facts are. Yeah, so he didn't check the box, okay? But that doesn't change the claim on the first petition for review over the reinstatement order, which is that the record did not contain evidence of a prior removal order. Now, I'm here arguing about information that petitioner gave to the government five days after the reinstatement order issued. He filed a motion to reopen under the regulation at 103.5, providing evidence that there was no prior order. And let me be specific about that. He actually timely departed. And when a person timely departs under an order of voluntary departure, there is no prior order. Counsel, there's not such a thing as an order of voluntary departure. As I read the regulations, it's an alternate order of removal, right? Wrong. Counsel, they have a regulation that calls it. Let me ask the question first, please. The question is, doesn't their regulation call it an alternate order of removal, what your client was given? That's the salient point here, Your Honor. It only becomes an alternate order of removal if there is not proof in the record that he timely departed. I think you're confused. I think it becomes an order of removal, right? Well, the voluntary departure statute actually says the judge gives you an order in lieu of a reinstatement order. Listen to my question. I think it's favorable for you in the end, by the way. Great. Yeah, I know. But so listen carefully. I thought by the way it read, what he was given way back there in the first time was an alternate order of removal. It's alternate, correct. An alternate order of removal. Correct. It only becomes an order of removal if the conditions are violated, so to speak. Correct. Okay? Yes. Right? Agree. Okay. And because the conditions weren't violated, the alternate removal order never took effect. But here's where the government has their waverish kind of argument. We put this in front of him. We gave an interpreter, and we said your subject. We said you've been removed. We said there's an order. The person said, I don't wish to make a statement. All this was before the person at the time of reinstatement. The officer, Mr. Brown, I think it is, at the time of reinstatement. And so that is what we look at in this case. Why isn't that true? All this happened in a matter of hours. The petitioner said, it's true. He didn't check the box. But within five days. Oh, I'm sorry. He checked the box. As soon as he. He says I do not wish to. You keep saying he didn't check the box. I don't get it. He checked that box. But what I want to convey is the regulation. He didn't waive it. Because the regulation at 103.5 allows him to put in evidence to reopen a reinstatement order. That's what this court held in Escoteo Castillo. That that is an administrative remedy. He took advantage of that remedy. He got that evidence in the record that's before this court. And therefore, this court has jurisdiction to review the denial of the motion to reopen. I see that my time is up. Ms. Gray, good morning. You may proceed. Good morning. May it please the court. I'm Lindsey Gray, appearing on behalf of petitioner Jose Perez Garcia. I am here along with his United States citizen wife, his four United States citizen children, and his United States citizen mother-in-law. I will now address the merits of the second petition for review in this case, which challenges ICE's denial of the motion to reopen the reinstatement order. Under the plain language of 8 CFR 103.5, a motion to reopen an ICE decision may be granted for proper cause shown. Because Mr. Perez Garcia established proper cause, we ask that this court vacate ICE's denial of the motion. After the reinstatement order was issued in this case, Mr. Perez Garcia provided ICE with a Mexican government entry document, otherwise known as an FME, as well as a declaration as proof that he timely departed under a grant of voluntary departure in 1999. Both parties agree that someone who timely departed under a grant of voluntary departure is not subject to reinstatement. ICE denied Mr. Perez Garcia's motion for three reasons. All three of those reasons are erroneous and require reversal of the agency's decision. First, ICE denied Mr. Perez Garcia's motion on the basis that he did not provide them with a US government issued proof that he timely departed or a G146. Significantly, however, such documentation is not required to prove that you timely departed. Neither Mr. Perez Garcia's voluntary departure order nor any regulation governing voluntary departure requires proof in the form of that particular documentation for any reason other than to return a voluntary departure bond. Second, ICE denied Mr. Perez Garcia's motion because the actual proof he provided, the FME, they're saying needed to be authenticated. Well, counsel, what do you, this, this Seventh Circuit case, Tapia-Lemos, tell me why it's not completely against you. On... Do you know Judge Easterbrook's opinion? I do, Your Honor. I may be saying it wrong. Tapia-Lemos, it's a 2012 decision in the Seventh Circuit. Yes, Your Honor, and what... Why does it say there's no review in this case? Your Honor, well, Ms. Rial-Mudo is covering the jurisdictional issues in this case. So that's why you shouldn't split argument. Can you answer the question? Why does that cover this case? Well, Your Honor, um, in... Your Honor, if I request... You can sit on your brief. Sure. Or you can send us a letter later. Thank you, yes, I will provide a 28-day letter. Either of those, either of those you want to do. Go ahead. I appreciate it, Your Honor. No, no big deal. Second, ICE denied Mr. Perez Garcia's motion because the FME, they're saying, needed to be authenticated. However, under 8 CFR 287.6, the document that Mr. Perez Garcia provided is self-authenticating. Mexico is a signatory to the convention abolishing the requirement of legislation of foreign public documents. And for signatories to this convention, no certification is needed from an officer in the Foreign Service of Public Documents. Now, ICE communicated this need for additional authentication to counsel via an informal telephone call. Mr. Perez Garcia has filed a motion for judicial notice requesting that this court consider evidence of these informal telephone calls and the fact that additional authentication is not possible. Respondent has opposed, saying that this evidence is not in the record. Likewise, however, there's nothing in the record except for a blanket assertion in the decision stating that Mr. Perez Garcia was ever notified as to the need for this additional authentication. Respondent can't have it both ways. Either this court can consider evidence of the informal telephone calls that are not in the record, or it can't. And if the court can consider such evidence, then the court must also consider the evidence provided by Mr. Perez Garcia that efforts were made, exhaustive efforts were made, to obtain this additional authentication. And the court should consider the FME under the best evidence rule. If the court cannot consider the information provided in the informal telephone calls, then the issue is not unexhausted because there was no proof that Mr. Perez Garcia was provided any notice of this, and therefore the issue is properly raised at this time. Respondent can't simply use the informal telephone call selectively whenever it benefits them. Third, ICE denied Mr. Perez Garcia's motion because, and in contrary to its own regulations, it completely disregarded Mr. Perez Garcia's affidavit in this case, and stated that it has little evidentiary value in verifying its timely departure. 8 CFR 103.5 subsection A2 specifically provides for the use of affidavits in motions to reopen when it states, a motion to reopen must state the new facts to be provided in the reopened proceedings, and be supported by affidavits or other documentary evidence. DHS completely disregarded Mr. Perez Garcia's affidavit in this case, and it was in contract to its own regulations. Additionally, Do you think that's what they're referring to in the last sentence? I do. Yeah, little evidentiary values, the little evidentiary values. Right, and so they're saying that his statement had, I mean, they essentially don't consider it because it's a statement by him. And the regulation specifically provides for such affidavits, and says that there should be new evidence to be provided in the reopened proceedings, but affidavits or other documentary evidence should be provided in reopened proceedings. And he provided an affidavit, which they completely disregarded, and an FME, which was a copy, but a self-authenticating copy under this treaty, which they also completely disregarded. Additionally, the decision denying the motion to reopen treats as a separate justification that Mr. Perez Garcia did not raise that he had timely voluntarily departed prior to the issuance of the reinstatement order. Having furnished a self-authenticating document from the Mexican government, Mr. Perez Garcia conclusively establishes that he did voluntarily depart in a timely manner, and so he negated this prior order, and there was no order to reinstate. Having said that, Mr. Perez Garcia did not understand the difference, the very nuanced difference, between a voluntary departure order and an alternate order of removal that was discussed a moment ago with Ms. Real Muto, and he raised this issue as soon as he was advised of the difference by counsel. Also, the fact that Mr. Perez Garcia did not raise this issue in 2014 prior to the issuance of the reinstatement order is not a grounds invoked by ICE in its denial, and therefore this court cannot consider it under the Chenery Doctrine. The fact that Mr. Perez Garcia did not raise this issue in 2014 prior to the issuance of the reinstatement order is stated in the recitation of facts by ICE. However, the actual rationale and the grounds invoked for the denial is confined to page 2, and nowhere does it talk about the fact that he did not raise this issue in 2014 prior to the issuance of the reinstatement order. Additionally, I want to address the first petition for review and the reinstatement of removal in this case. The first petition of review actually challenges the reinstatement order on its face prior to the motion to reopen, and under 8 CFR 241.8A1, the regulation requires that the immigration officer obtain the prior order of removal, and as was discussed with Ms. Realmuto, the grant of voluntary departure stays a grant of voluntary departure and not an order of removal unless the person overstays, and they didn't prove that he overstayed. In fact, everything in the record points to the fact that he left. Well, counsel, not everything, because he says, I've been deported twice, because he makes no statement when it's put in front of him, and it's interpreted to him with the facts that on the page, you know what I'm referring to, 196 of the record. Yeah, Your Honor, and just to point out for his statement, he says that he's been deported twice, but if you actually take ICE on what they say, he had only been deported once in 2000, and he had overstayed. So this goes to show that he didn't understand the difference, because he had left twice, not understanding that the first was under a grant of voluntary departure, and when they asked him when and where, he says St. Louis in 1998, and that was the date he was given voluntary departure, not order removed. And I'd like to reserve my remaining time for rebuttal. Well, when you come back, tell us, laid out in words simple enough for a child to understand, what would we tell the ICE, and it's our grant of the petition. You erred by doing one, two, and three, and make it simple for us. We'd like- You'll do that when you come up on rebuttal. We'll hear from the government. Mr. Bocchini? Bocchini, Your Honor. Bocchini, I'm sorry. You may proceed, sir. Bocchini. Walter Bocchini for the Department of Justice. May it please the court. Your Honor, the court should deny disconsolidated petitions for review because the petitioner has never established that he complied with voluntary departure. The fact is that despite what opposing counsel says, nothing in the records except for his self-serving affidavit and the photocopy of this alleged Mexican government document shows that he complied. He breached a bond, a $5,000 bond, in the late 90s. He did not provide any evidence, the G-146, or any other evidence. And on that point, I just want to go back. On its decision denying the motion to reopen, District Director Wong did not say that the petitioner simply failed to supply the G-146. He said he failed to supply the G-146 or any other evidence of compliance with voluntary departure. So that was in the late 90s when he should have shown compliance back then. After that, he was found inside the United States in April of 2000, and ICE assumed back then, as they should have, that he did not comply and executed the removal order. At that time, he again did not claim that he complied with voluntary departure. Now, does the record reflect anything? You just said something about the, I think, 2000 time. But does the record really have anything on that except it happened? Well, it has the, I believe it has the I-213 with the notes from the immigration officer stating that he, they're finding that he did not comply with voluntary departure. What year is that from? That would have been from April, around April 2000. I don't have their exact record site with you, but I can provide that later on in a letter. Go ahead. Proceed. Now, after that, petitioner obviously has re-entered the United States and remained in the United States until January 2014 when he was again picked up by ICE and again made no claim of having complied with voluntary departure. Now, counsel states that he doesn't know that he was ignorant during this time. He had no idea that he had to assert voluntary departure. But I think that the very important point here is that when he was before the immigration judge back in 1998, he had counsel. He was before the immigration judge, he had counsel, and he accepted the order of voluntary departure with an alternate order of removal to Mexico. So, now, we don't have those transcribed in the record, but that's because he waived appeal. The only time that we have transcription in the record is when there's an appeal to the Board of Immigration Appeals. But during that hearing, the immigration judge probably would have, would have explained to him his obligation of voluntary departure or, at the very least, would have assured that his counsel would have explained to him his obligation of voluntary departure. So, his claim that he was ignorant for all of these years, I don't think the court should just simply accept that as fact, even though, obviously, in the record, all we can do is show that he had counsel before the immigration judge. Now, all of this evidence supports both of the decisions of the Immigration and Customs Enforcement. First, on the reinstatement itself, where he did not ever claim compliance, voluntary departure, and never sought to contest any of the findings of ICE. Well, now, counsel, the statement he signs or the sentence he signs says, it doesn't say, I don't contest the determinations. It says, I don't make a statement contesting this determination. Isn't there a difference? I don't believe any court has ever found that there's been a difference because of the, I don't make a statement. Well, what court says that that means, I do not contest the determination? Yeah. As opposed to, I'm just not making a statement about it. You understand the distinction? Technically, I can see how it can be viewed that way, but it has never been, that has never really been accepted as such. Well, but is there, is there authority for you? I hear what you're saying. But is there authority for you that says this, this sentence, if they have a deterpreter and if all the other things are, that this sentence means I don't contest it? Your Honor, I'm not able to pull an authority out of my head right now, unfortunately, but I would be able to provide for that with a 28-J letter. Now, you kind of argue a waiver theory is the undertone of your brief. It's not really. Do you agree with that or not? No, no, no, Your Honor, it's not a waiver. Well, that's what you did here at argument, too. It's a he didn't object here and he didn't object here and he didn't object there. It's a waiver theory. Does that apply in immigration law? Well, Your Honor, no, I don't want to say that this is a waiver theory, Your Honor. We believe that the fact that he signed the box saying that he did not provide a statement to contest is evidence to support the reinstatement order and also evidence to support the denial of the motion to reopen. As the court will review the reinstatement order for substantial evidence and will review the denial of the motion to reopen for abuse of discretion. And that is a significant supporting evidentiary position from the government. But we wouldn't say that that's a waiver. If we were dealing solely with the reinstatement order aside from the motion to reopen and he had not checked the box, we would have argued exhaustion. But here he did file his motion to reopen and it was clearly considered by ICE. So those issues are before the court. Not, however, under the regulations. That is not something that the agency has ever invoked in this case. District Director Wong reached the decision, clearly considered it, and properly rejected it. But not under the regulations. It's not in the decision. And we believe that it would not be prudent for the court to get ahead of the agency on stating that there is a reopening mechanism, a regulatory reopening mechanism, for reinstatement matters before the Secretary of Homeland Security is able to make that determination. As the court knows, Congress delegated to the Secretary the authority to administer and enforce 1231A proceedings, the reinstatement proceedings, along with many others. And that's under 8 U.S.C. 1101A. And so if anybody should create a regulatory mechanism for reopening reinstatement, it should be the Secretary of the Attorney General. And those regulations would be under 241.8, which is where the rest of the reinstatement regulations are found, not at 103.5, which deals exclusively with immigration benefits before U.S.C.I.S. and not ICE. Now, of course, there is the SCOTO decision that this court decided earlier on, but where the court invoked, with the government also invoked 103.5 as a reopening mechanism for a totally different proceedings under 1228B, which is a different set of concerns. For example, there's a 14-day waiting period before execution of the removal order. During that 14-day period, events can occur post-removal, which the court wouldn't then have jurisdiction to review. And so that was one way to handle that decision. But SCOTO was decided on the cusp of regulatory changes. And specifically, in August 2011, U.S.C.I.S. And this is not in the record, and I can file a 28-J letter to supplement. But in August 2011, U.S.C.I.S. issued a final rule that became effective in November 2011 that reorganized and changed some of the changes to regulations. And what it did is, on Part 103, under which this 103.5 regulation is found, it changed the title, where before it was powers and duties, and that was powers and duties of immigration officers generally. It then became immigration benefits, and it became immigration benefits, semicolon, biometrics, semicolon, something else that had nothing to do with it. That was one thing it did. They also created three additional subparts to this Part 103 regulations. And Subpart A was, again, titled Immigration Benefits. And the 103.5 regulation is found within Subpart A of Part 103. And when you read that, it just clearly shows that it belongs solely to immigration benefits before U.S.C.I.S., and that would have been petitions for alien relatives and such. And it's the very point that the Tenth Circuit made in its Aguilar-Aguilar decision in a footnote, where it addressed these regulations after these regulatory changes with the change in the title. So, Your Honor. Counsel. Yes, Your Honor.  Is the problem here, trying to understand exactly what the problem that was noted, is the problem that it had no certification or that it was a photocopy? I think both, Your Honor. Well, absent a certification, all we have is a photocopy. If this was a certified copy, we would have a completely different, I think, understanding of it. But this is just a photocopy. But on the certification, I thought the argument was that under a convention or treaty, that authentication is not required of this kind of a document. That's an incorrect reading of those regulations. The regulations actually require two certifications. One would be to obtain a certified copy. The second part is to obtain a certification from the Foreign Officer of the United States at the consulate. And what happens for public documents, which we don't concede this is a public document, but what happens for public documents, you don't need that second certification by the Foreign Officer of the United States. But you still need to show that this is a certified copy. And absent that, all there is is a photocopy of an alleged Mexican government document that ICE simply sees it 15 years too late and simply says, what is this? And, Your Honor, the petitioner's argument essentially boils down to this. Well, here I have a photocopy of this Mexican government document. I should have given it to ICE 15 years ago, but instead ICE snuck back into the country, and I stayed in hiding for 15 years. Now here it is, but I can no longer authenticate it because it's too old. And that simply does not discharge the petitioner's burden of proof on a motion to reopen. There is no case that would support that. Therefore, there is no self-certification, not established that the document self-certifies in any way. But even if it was a copy of a certified document, you would still, the government still would have had a problem with it because it was a photocopy. Is that correct? No. I mean, if the copy had been issued by an authority that had authority to issue it, an official that had authority to issue it, it would have been a certified copy. So I think then the copy would have been fine. Well, what I'm trying to get at is, correct me if I'm wrong, but here the document that was presented was a photocopy of a document of some sort. It was a photocopy. The photocopy did not bear a seal or any kind of certification. Exactly. And the question I'm getting to is, if it had been a photocopy of a document that had apparently borne a seal or other certification, would the government still have had a problem with it just because it was a, by virtue of the fact that it is a photocopy? I believe so, Your Honor. I believe so. And I was trying to think of an analogy for this. And what I could come up with is something, you know, when I was applying for colleges or for law school or even for jobs after law school, when I had to supply my transcripts, I couldn't simply just supply copies of my transcript. I had to obtain a certified copy of my transcript that I obtained at the registrar's office. When you look at this copy, counsel, isn't that some kind of certification in the lower right-hand corner? Well, but it's some sort of certification, but it hasn't been certified that this is what it purports to be. I mean, if you look at the document. But it can't be self-certified. It cannot be self-certified, no. And you say the regulations are very clear on that. I believe so, Your Honor. Well, no regulation is very clear, Your Honor, but I think that there is a lot of history behind those regulations that explains how the regulations work, that we do need two certifications, one for the copy, getting a certified copy, the second from the officer of the Foreign Service. And then when we're dealing with public documents, which, again, we don't concede this is, you don't need that second certification from the foreign officer. And this is in line with the Hague Treaty for acceptance of foreign documents, so there is a ton of history on this. And is it the case that there's no possible way of, at this point in time, certifying it or demonstrating that it is an authentic document? Well, Your Honor, again, that's not something that was ever before the agency. Counsel, you know, she represented to the agency. These phone calls back and forth and all that sort of thing. What did counsel say? We're trying to get this, but we can't? Well, counsel represented to the local ICE counsel that she would obtain the original or the certified copy, and then she never did. So for months, frankly, I assumed this case was going to go away, that she was going to provide the original or the certified copy, and then that was never provided. So at that point, ICE is like, well, you made the presentation, but you never supported it. And given all the immigration history behind this particular alien, everything, that nothing supports his claim that he voluntarily departed, then we don't accept this is sufficient. The claim that she made that she can't now certify because it's too old, that was never made before the agency. That was only made in the motion before this court. That's not, she didn't even be considered. She made those statements and then provided, I believe, a statement by the petitioner's wife and also a statement by counsel that she cannot certify. That was never presented to the agency. So to reverse the agency on something that they never had a chance to consider in the first instance really would go against the court's directive. What's the basis for the final statement that Mr. Perez-Garcia's statement has little evidentiary value? Well, because it's a self-serving statement. Well, all testimony is self-serving, counsel. That doesn't go very far. Go ahead. So it has very little value. I mean, if it was his statement plus something else from an uninterested party stating that what the document is, what it reports to be, or had she provided evidence to ICE that it cannot be certified, again, by an uninterested party and that had been considered by ICE, that would be something. But standing alone, his statement right there that he got this document really has very little evidentiary value. By itself, it cannot be sufficient. That's the position of the district director in Wong. And, Your Honor, if I could just make one really quick point. I see my time expiring. Yes, you may. And then I'm going to ask you one final time to explain in words that I can understand what the government's position is on the 1035B issue. Okay. But go first with your additional point. Yes. Counsel says that she engaged local ICE counsel on the back and forth regarding authentication of this matter. I just want to point out that this decision by ICE was not issued by the local ICE counsel. This was issued by the district director out of Chicago, the only person who had authority to do this. So I don't know what kind of informal information she had with the local ICE counsel, but that's not what was before District Director Wong out of Chicago. And so she didn't submit anything else on that. Now, Your Honor, back to your question. I'm sorry. On No. 3.5? Yes. Basically, Your Honor, it's not before this court. ICE simply did not invoke 103.5 as a basis for adjudicating the motion. So the court doesn't need to address it. It can just go to the merits. And this case rises and falls on the merits of the denial of the motion to reopen. There's absolutely no need for the court to get more complicated or, more importantly, ahead of the agency on such an important mechanism, a regulatory mechanism for reopen reinstatement of removal. Given that those are streamlined procedures, those two simply do not, they are contradictory. Very well. Thank you very much, Your Honor. How much time does Ms. Gray have? Less than a minute. We'll give you a couple of minutes, but get right to the point if you wouldn't. Thank you. Your Honor, as to whether or not this is a 103.5 motion, let me make a couple of points. This motion was filed under 103.5. It was adjudicated pursuant to 103.5. We filed a mandamus in the district court to compel adjudication under 103.5 because ICE was refusing to adjudicate the motion. In the decision, the agency refers several times to the motion, which again was filed under 103.5. And in the decision, the agency likewise does not say that it's deciding this pursuant to its general authority, which all goes to the fact that this motion was filed under 103.5. Now, counsel for respondent just said that the decision drafted by ICE was drafted by someone other than the person whom myself, Mr. Perez-Garcia's counsel, engaged in these informal telephone calls with. However, as the court will note, there's reference to the informal telephone calls in the decision because it talks about the need for authentication and how that was conveyed to myself. Additionally, this information is not on the record, but Mr. Salinardi, the person who I was speaking with, told me that he helped draft this decision. You know, it just is another example of ICE saying, well, we're going to use these conversations when it benefits us because we had the benefit of writing the decision, but then we're not going to, we're going to say, well, this evidence isn't in the record anytime that Mr. Perez-Garcia brings it up. Additionally, I do want to point out, and actually, Judge Woolman, you were thinking the same exact thing as I was when we were talking, or I believe it was Judge Shepard, regarding the additional authentication of the FME. There is, in fact, a signature and a stamp by an officer in the Foreign Service on that document, and as was brought up by this court, it's impossible to authenticate the document at this point and actually contain in the record, I believe, starting on page 155, is an administrative publication by the Mexican government as to why the FME was done away with and as to why they put additional procedures in place, and there's discussion in those documents as to the fact that it was a mess because we had all of these paper documents and there was no way to look back and have efficient records. Judge Woolman, you asked me right before I finished my first time as to what I was asking this court to do, and I'm asking this court to vacate both decisions, both the denial of the motion to reopen as well as the reinstatement order, and find that Mr. Perez-Garcia established proper cause for reopening and allow him to enter the United States and be placed in removal proceedings so that he may apply for relief from removal. To do that, would we have to say that ICE or whoever should have accepted the authenticity of this MFE? M-E-E or whatever, F-E? F-M-E. Do we make that determination? You can make that determination, Judge. There were three bases on which I believe this court could reverse the decision. That is one of them, that the authentication was not required because the document is self-authenticating. The other is the complete disregard of the affidavit, even though affidavits are specifically provided for in the regulations. And the last one was the requirement of the G-146, which additionally, despite counsel's assertion that it was required under his voluntary departure order, it wasn't. And there's nothing in the regulations that require that other than for return of a bond. Well, this may be a gratuitous comment, but your counsel doesn't present a very sympathetic picture, does he? Well, that's neither here nor there. I mean, given his history of what he sort of back and forth, but I guess we don't take that into account. And, Your Honor, I think that- But you're asking us to when you ask him to send us back to his grandmother and his children and his wife, which is a compelling story. I am- When the voluntary departure order was issued, he wasn't married, he didn't have any children, and he has quite an established life here and a family. He has no criminal history. I mean- I suppose it could be argued that it strains credulity that he did not know the consequences of his departure without complying with the regulations. He did not, and all of their evidence is saying- Well, okay, we don't get into that. All of their, excuse me, argument is saying that he does, but there's no evidence that he did. Thank you. We thank both sides for the argument, and the case is now under consideration.